**PUBLISHERS' ASSOCIATION OF NEW YORK CITY (on behalf of its member, The New York Times Company), Plaintiff-Appellee,**

**v.**

**NEW YORK MAILERS' UNION NUMBER SIX, Defendant-Appellant.**

**No. 347, Docket 27992.**

United States Court of Appeals Second Circuit.

Argued May 1, 1963.

Decided May 20, 1963.

Sidney Sugarman, New York City, for appellant.

Andrew L. Hughes, of Townley, Updike, Carter & Rodgers, New York City (Joel T. Camche, New York City, of counsel), for appellee.

Before CLARK, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge.

The district court granted plaintiff's motion to compel arbitration of an alleged violation by the Union of a collective agreement and for a stay of the Union's action pending such arbitration. We affirm the order compelling arbitration but reverse the order granting the stay because of failure to comply with the requirements of the Norris-LaGuardia Act, 29 U.S.C. § 101ff.

The Publishers' Association and the Mailers' Union were parties to a collective agreement. As is common in the printing and publishing trades the collective agreement required that foremen in the shops of the members of the Publishers' Association be members of the Union. Section 20-C of the collective agreement provided:

> "the Union shall not discipline the Foreman for carrying out the instructions of the Publisher or his representative."

The agreement contained a broad arbitration clause providing for the submission to arbitration of "all disputes (except discharge cases) arising out of the operation of this agreement, all disputes regarding the interpretation of any portion of this agreement and any and all disputes (except discharge cases) arising out of, relating to, or affecting the operation of this contract."

Rowan, a foreman at the Times, which is a member of the Association, gave an employee named Kelly, a fellow union member, a disciplinary lay-off of one week as a penalty for certain conduct in the shop. Kelly filed charges against Rowan with the Union, alleging that Rowan had violated the Union's constitution by the action which he took against Kelly. The Union membership voted to consider the charges and an investigating committee was appointed. The Association submitted a grievance against the Union charging that the Union's action on Kelly's complaint constituted a violation of Section 20-C, supra.

The Union refused to arbitrate the Association's grievance and the Association commenced the present action to compel arbitration and to stay any further action by the Union in processing Kelly's charges.

We hold that the district court correctly ordered the Union to proceed to arbitration. The dispute, in the words of the arbitration clause, supra, is one "arising out of, relating to, or affecting the operation of" the collective agreement. The only reservation of any dispute from the applicability of the arbitration process which might be thought of as raising any doubt of the arbitrability of the Association grievance is a clause providing that "local union laws not affecting wages, hours, or working conditions and the General Laws of the International Typographical Union shall not be subject to arbitration." We would have to resolve such a doubt, if one existed, in favor of arbitrability.

> "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United States Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

It would seem reasonable that if the court could properly compel arbitration it could stay, pending arbitration, the acts which are alleged to violate the collective agreement and are the sub-

ject of the arbitration procedure. But wherever a question of the availability of an injunction arises in a labor context we are called upon to consider the effect of the Norris-LaGuardia Act. That Act limits severely the power of a federal court to issue an injunction in a case involving or growing out of a labor dispute. It is quite clear that the union's action on the Kelly charges both involves and grows out of a labor dispute.

Absent Section 301 of the Labor-Management Relations Act (29 U.S.C. § 185), there could hardly be any question that the power of the court to enjoin a violation of a collective agreement would be limited by the Norris-LaGuardia Act. If the court has power to enjoin the alleged violation in the present case it has that power only by virtue of the power to compel arbitration which is conferred by Section 301. But we are then faced with exactly the situation with which the Supreme Court dealt in Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). There the Court was called upon to enjoin strikes or work stoppages which were alleged to be violative of a collective agreement providing for arbitration. The Court, holding that the Norris-LaGuardia Act prevented the issuance of such an injunction, stated that there was "no conflict" between an employer's right to compel arbitration and his inability to secure an injunction against the alleged violation which was the subject of the arbitration.

"The plain fact is that § 301, as passed by Congress, presents no conflict at all with the anti-injunction provisions of the Norris-LaGuardia Act. Obedience to the congressional commands of the Norris-LaGuardia Act does not directly affect the 'congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes'* at all for it does not impair the right of an employer to obtain an order compelling arbitration of any dispute that may have been made arbitrable by the provisions of an effective collective bargaining agreement. At the most, what is involved is the question of whether the employer is to be allowed to enjoy the benefits of an injunction along with the right which Congress gave him in § 301 to sue for breach of a collective agreement. And as we have already pointed out, Congress was not willing to insure that enjoyment to an employer at the cost of putting the federal courts back into the business of enjoining strikes and other related peaceful union activities."

370 U.S. at 213–214, 82 S.Ct. at 1338.

It is true that in the Sinclair case the Court was dealing with alleged contract violations which involved activities removed from federal jurisdiction by Section 4 of the Norris-LaGuardia Act, while in the present case the Union must be held to have failed to establish that the activities which have been enjoined are included in any of the categories of Section 4. However, Section 7 of the Act[1] covers activities which are not covered by Section 4. Section 4 withdraws

---

* Textile Workers Union v. Lincoln Mills, 353 U.S. 448, at 458–59 [77 S.Ct. 912, at 918, 1 L.Ed.2d 972].

1. "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually au-

power to issue an injunction against certain activities. Section 7 applies to injunctions in *any* cases involving or growing out of a labor dispute and prohibits the issuance of injunctions in all such cases, without regard to the nature of the activities against which the injunction is sought, unless certain procedural requirements are met and unless the court issuing the injunction makes certain findings. Not only have these requirements not been met in the present case but it would clearly be impossible for the court to make the required findings.

In the Sinclair case, supra, the Supreme Court examined the legislative history of Section 301 and found there extensive evidence to support the view that Congress in adopting Section 301 did not intend to repeal the Norris-LaGuardia Act. While, as we have indicated, Sinclair involved activities which

fell within Section 4 of the Norris-LaGuardia Act, it would be very difficult indeed to make out from the legislative history, as it is set forth in Sinclair, a congressional intent to repeal Section 7 of the Act and to leave Section 4 intact. There is nothing whatever in that history on which to base any supposition that Congress intended to treat any part of the Norris-LaGuardia Act differently from any other part. Indeed the subtlety of a partial repeal would be even more difficult to derive from the legislative history than would total repeal, the possibility of which the Court rejected.

Moreover there is no ground in reason or policy for assuming that Congress intended to repeal Section 7 but not Section 4. If we were to assume the contrary we would reach the anomalous result that, while an employer could not enjoin a strike or other Section 4 activity in violation of a collective agreement

thorizing or ratifying the same after actual knowledge thereof;

"(b) That substantial and irreparable injury to complainant's property will follow;

"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

"(d) That complainant has no adequate remedy at law; and

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

"Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property: *Provided, however,* That if a complainant shall also allege that, unless a temporary restraining order shall be issued without notice, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice. Such a tempo-

rary restraining order shall be effective for no longer than five days and shall become void at the expiration of said five days. No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.

"The undertaking mentioned in this section shall be understood to signify an agreement entered into by the complainant and the surety upon which a decree may be rendered in the same suit or proceeding against said complainant and surety, upon a hearing to assess damages of which hearing complainant and surety shall have reasonable notice, the said complainant and surety submitting themselves to the jurisdiction of the court for that purpose. But nothing in this section contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity." 29 U.S.C. § 107.

pending arbitration of the violation, he could enjoin any other type of violation. Ordinarily a strike would be far more disruptive of the contract relationship, and far more inimical to the statutory ideal of peaceful solution through the arbitration process than would the type of violation with which we are dealing in the present case. If Congress by adopting Section 301 had made any exception to the Norris-LaGuardia Act it would surely have permitted the use of the injunctive remedy against strikes in violation of collective agreements rather than against violations of a much less serious character.

■ Since, then, the Norris-LaGuardia Act prevents the issuance of the stay which was granted by the district court, we must reverse that part of the order.

The order of the district court is affirmed to the extent that it compels arbitration and reversed to the extent that it enjoins the action of the union.