537 F.2d 669
 92 L.R.R.M. (BNA) 3203, 93 L.R.R.M. (BNA) 2875,
46 A.L.R.Fed. 377, 78 Lab.Cas. P 11,478,
79 Lab.Cas. P 11,641
 DRYWALL TAPERS AND POINTERS OF GREATER NEW YORK, LOCAL 1974,
et al., Plaintiffs-Appellees,
v.
OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL
ASSOCIATION OF the UNITED STATES AND CANADA et
al., Defendants-Appellants.
 No. 1075, Docket 76--7108.
 United States Court of Appeals,
Second Circuit.
 Argued April 28, 1976.
Decided June 18, 1976.
As Amended Aug. 18, 1976.
 
 Glenn V. Whitaker, Washington, D.C. (Donald J. Capuano, O'Donoghue & O'Donoghue, Washington, D.C., Robert S. Savelson, Cohen, Weiss & Simon, New York City, of counsel), for appellants.
 Burton H. Hall, New York City, for appellees.
 Robert E. Dizak, Dizak & Lashaw, New York City, for amicus curiae, Metropolitan New York Drywall Contractors Ass'n, Inc.
 David S. Barr, Barr & Peer, Washington, D.C., for amicus curiae, International Brotherhood of Painters and Allied Trades.
 Before LUMBARD, WATERMAN and MESKILL, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 Defendants below, the Operative Plasterers' and Cement Masons' International Association of the United States and Canada ('Plasterers') and two of its locals appeal from an order of the United States District Court for the Southern District of New York, Metzner, J., which granted a preliminary injunction in favor of plaintiffs Drywall Tapers and Pointers of Greater New York, Local 1974 ('Painters') and certain of its individual members which, in general, would require the removal from the performance of any work involving taping or pointing of drywall surfaces at any jobsite wherever located of any members of the defendants. This Court granted a stay of the injunction and expedited argument of the appeal and, upon hearing argument on April 28, 1976, we continued the stay pending our determination of the appeal. We now affirm the district court's decision.
 
 
 2
 This appeal stems from a jurisdictional dispute about job assignments for a prefinishing aspect of construction work. Basically, the argument centers around 'Sta-Smooth,' a taping and pointing material, and whether its use falls within the work province of painters or plasterers. Both unions involved herein, as members of the Building and Construction Trades Department of the AFL-CIO ('Department'), are bound by its arbitral and administrative machinery. In 1947, a decision of record[1] by the Department assigned work by the nature of the material used--plasterers did work involving plaster materials, and painters did work requiring adhesive materials; since in 1975, a local arbitration board characterized 'Sta-Smooth' as a plaster material, if the 1947 rule still governs, the application of 'Sta-Smooth' would be plasterers' work. In 1961, however, a Memorandum of Understanding ('Memorandum'), signed by both the Plasterers' and Painters' internationals and binding on their locals, provided that all pointing and taping of drywall, regardless of the material used, is painters' work so long as the surfaces were not to receive plaster or acoustical finishes; the Memorandum further stated that it superseded all prior understandings. The two unions hotly dispute whether the 1961 Memorandum is still viable.
 
 
 3
 The construction industry has established procedures for the settlement of jurisdictional disputes.[2] The dispute is first heard by a local board, here the Executive Committee of the Building Trades Employers' Association of the City of New York ('BTEA') whose decision is appealable to the Impartial Jurisdictional Disputes Board ('Disputes Board') of the Department. A decision rendered by the Disputes Board may be appealed to the Appeals Board of the Department, whose decision is final. Finally, the Joint Administrative Committee, overseer of both the Disputes and Appeals Boards, may certify repetitive issues for resolution by the international unions, and, in the event that no settlement is reached in ninety days, then to a Hearings Panel for a national decision binding on all unions. As Judge Metzner aptly noted, '(i)t is clear from this highly-developed and sophisticated arbitration structure that no jurisdictional dispute between members of the Department should ever reach the courts.'
 
 
 4
 The dispute involved herein has been before the BTEA, which held, in 1975, without mention of the 1961 Memorandum, that 'Sta-Smooth' was a plaster material and that its application was plasterers' work. The appeal of this decision to the Disputes Board was at first allowed and then revoked because the Painters had initiated arbitration against an employer, allegedly in violation of the Department's constitution. Prior to this time, during a three-month period in 1973, the Disputes Board had resolved at least ten separate jurisdictional controversies by relying on the 1961 Memorandum. In December 1973, the Joint Administrative Committee referred the matter to the presidents of the international unions to settle what had become a repetitive question; during the interim, the Committee instructed the Disputes Board to defer action on appeals involving this issue. After this latter ruling was protested by both sides to the instant dispute, the Joint Administrative Committee, in January 1974, assured the Painters that it would consider the matter at its next meeting. Since no further action has resulted, the Disputes Board has continued to defer all appeals involving this issue. The Joint Administrative Committee has not referred the question to the Hearings Panel for a national decision.
 
 
 5
 On August 28, 1975, plaintiffs filed a complaint in the United States District Court alleging that defendants had breached the 1961 Memorandum by asserting jurisdiction over work which properly should be assigned to Painters. Federal jurisdiction was based on § 301(a) of the Labor Management Relations Act ('LMRA'), 29 U.S.C. § 185(a).[3] Plaintiffs sought, inter alia, specific performance of the Memorandum and an injunction restraining defendants from assuming painters' work. The district court initially concluded that the issue of the present applicability of the Memorandum was best decided under existing union administrative machinery and directed both locals to petition the Joint Administrative Committee for referral to the Hearings Panel. Judge Metzner ruled that the parties' motions could be renewed if the unions did not cooperate or if the Department failed to follow its own plan. On December 11, 1975, the Painters, following the mandate of the court, applied to the Joint Administrative Committee for the necessary action but no action was taken by that Committee. The Plasterers evidently did not join the Painters' efforts to resolve the dispute within the union framework. Plaintiffs then renewed their motion for a preliminary injunction. Defendants cross-moved for summary judgment, alleging the plaintiffs' failure to exhaust contractual remedies. Plaintiffs answered with their own motion for partial summary judgment.
 
 
 6
 On March 5, 1976, the district court issued an opinion granting the preliminary injunction but found summary judgment for either side inappropriate, since substantial factual matters remained unresolved. Judge Metzner found that repeated reliance on the 1961 Memorandum by the Disputes Board indicated the continuing viability of that document and, thus, the likelihood that plaintiffs would ultimately succeed on the merits. He further found that compliance by the Painters with the earlier order of the court constituted exhaustion of contractual remedies within the AFL-CIO's Building and Construction Trades Department. On March 12, Judge Metzner issued an order that required Plasterers to remove its members from jobsites, 'wheresoever located,' that involved taping and pointing of dry-walls by plasterers.
 
 
 7
 On appeal, Plasterers claim that the district court lacked jurisdiction to issue an injunction; they also assert, assuming jurisdiction was peoper, that the court abused its discretion by granting the injunction and that, in any case, the scope of the order appealed from is too broad.
 
 
 8
 The initial issue for our consideration is whether the Memorandum contested here comes within the terms of § 301(a) of the LMRA, which vests jurisdiction in the district courts for suits alleging 'violation of contracts . . . between any . . . labor organizations (representing employees in an industry affecting commerce.).' It is well established that § 301(a) comprehends 'other labor contracts besides collective bargaining' agreements. Retail Clerks v. Lion Dry Goods, 369 U.S. 17, 26, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962) (strike settlement agreement). See also, Abrams v. Carrier Corporation, 434 F.2d 1234 (2 Cir. 1970), cert. denied sub nom. United Steelworkers of America, AFL-CIO v. Abrams, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) (union charter and bylaws); Local 33, Int. Hod Carriers, etc. v. Mason Tenders, etc., 291 F.2d 496 (2 Cir. 1961) (longstanding custom and practice); Parks v. International Brotherhood of Electrical Wkrs.,314 F.2d 886 (4 Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1962) (constitution of international union); International Brotherhood of Firemen and Oilers v. International Ass'n of Machinists, 338 F.2d 176 (5 Cir. 1964) (no-raid agreement); United Textile Workers v. Textile Workers Union, 258 F.2d 743 (7 Cir. 1958) (no-raid agreement). Enforcing freely negotiated contracts between labor organizations both minimizes disruption of interstate commerce and encourages the voluntary resolution of inter-union disputes. We hold that the Memorandum in question here clearly falls within the literal terms and policy objectives of § 301(a). It is an agreement of definite content negotiated by two international unions to resolve work assignments within the construction industry in an effort to prevent labor warfare.
 
 
 9
 The remaining jurisdictional question is whether the anti-injunction provisions of the Norris-LaGuardia Act precluded the district court from enjoining the activities claimed to breach the Memorandum. Plasterers argue that, § 301(a) notwithstanding, since a work assignment dispute falls within the Norris-LaGuardia Act's definition of a 'labor dispute,' 29 U.S.C. § 113(c),[4] the district court lacked jurisdiction to issue the injunction, 29 U.S.C. §§ 101, 104(b).[5] We cannot support Plasterers' narrow view of these statutes.
 
 
 10
 In Boys Markets v. Clerks Union, 398 U.S. 235, 249--250, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970), the Supreme Court stated that the courts must accommodate the 'seemingly absolute terms of the Norris-LaGuardia Act, and the policy considerations underlying § 301(a). . . . (C)onsideration must be given to the total corpus of pertinent law and the policies that inspired ostensibly inconsistent provisions.' The Court also noted that, although the Norris-LaGuardia Act had been intended to curb the federal courts' misuse of injunctive powers in labor-management controversies, even as originally enacted the prohibition against federal injunctions was not absolute. Furthermore, as the power of unions and management assumed greater balance, Congress shifted its legislative focus to encouraging administrative techniques promoting the peaceful resolution of industrial disputes. 398 U.S. at 250--251, 90 S.Ct. 1583. See also, C F & I Steel Corp. v. United Mine Workers of America, 507 F.2d 170 (10 Cir. 1974).
 
 
 11
 In National Association of Letter Carriers v. Sombrotto, 449 F.2d 915, 919 (2 Cir. 1971), this Court noted that § 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, restricted federal jurisdiction 'only in certain specified instances, particularly with regard to the enjoining of strikes, the joining of labor unions and the lawful aid to persons engaged in such activities.' The policy section of that Act, 29 U.S.C. § 102, stresses the worker's 'freedom of association, self-organization, and designation of representatives of his own choosing. . . .' Despite Plasterers' efforts to argue otherwise, the dispute in this case simply does not fall within the abuses which the Norris-LaGuardia Act was enacted to prevent. The injunctive relief sought here will not infringe upon the workers' organizational or bargaining rights but will instead enforce a work assignment agreement negotiated by the unions themselves. Since the conduct enjoined here does not fall within the specific provisions of the Norris-LaGuardia Act, the district court had jurisdiction to grant injunctive relief. National Association of Letter Carriers v. Sombrotto, supra; Retail Clerks Union Local 1222 v. Alfred M. Lewis, Inc., 327 F.2d 442 (9 Cir. 1964); Parks v. International Brotherhood of Electrical Wkrs., supra.
 
 
 12
 Finally, Plasterers contend that even if jurisdiction existed to grant injunctive relief, the district court erred by not complying with the procedural requirements of § 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107,[6] or, if that Act does not apply, the requirements for a preliminary injunction of Rule 65, Fed.R.Civ.P. These requirements mandate that the injunction issue only after the court has heard testimony in open court and made certain findings of fact. We find no merit in this argument. The obvious purpose of the hearing requirements is to prevent grants of injunctions on ex parte applications and to ensure that relief follows only after consideration of all facts and arguments deemed important by the parties. In the present case, both sides submitted voluminous affidavits prior to each of Judge Metzner's decisions. Appellants were obviously content to rest on that evidence, as they never requested a further hearing. Finally, the question of the validity of the 1961 Memorandum was not a question that would be subject to greater elucidation by live testimony. The viability of the Memorandum depended on whether the parties and the arbitrators who resolved such disputes had recently relied on the Memorandum in their decisions. Thus the documentary evidence presented to Judge Metzner by both sides was sufficient to satisfy the hearing requirement and enable the court to decide whether an injunction should issue.
 
 
 13
 Painters were therefore entitled to injunctive relief upon a demonstration that they would likely succeed on the merits, that the balance of hardship favors them, and that the public interest would be served by issuance of the injunction. See United States v. City of New Haven, 447 F.2d 972 (2 Cir. 1971).
 
 
 14
 We find no error in Judge Metzner's decision that continued reliance by the Disputes Board on the 1961 Memorandum suggests that plaintiffs will ultimately prevail in proving the continuing viability of that document. We further agree with the district court's finding that appellants' disregard of the court's previous order to petition within the union's arbitral framework to resolve this dispute is a significant factor to be considered in determining whether to issue this injunction. Only the Painters sought to implement the court's directive, causing the district court to note that it was 'at a loss to understand the failure of defendants (Plasterers) to join in trying to resolve this matter . . . especially in view of the court's direct mandate.' We can only conclude that it benefits Plasterers to keep the issue unresolved, since they can then continue to assert jurisdiction over the disputed work assignments; their quest for ambiguity has been aided by the unwillingness of the union hierarchy to decide the issue. The failure of Plasterers so to comply with Judge Metzner's order strongly militates against their request for a denial of the injunction in the district court or for further relief from this court.
 
 
 15
 The balancing of hardships tips heavily in favor of granting the injunction. While the parties disagree concerning the number of plasterers who will be adversely affected by the injunction, at this preliminary stage it is unnecessary to determine which side has presented the more accurate statistic. Whatever the number, the fact remains that a similar number of painters are being affected under the alleged usurpation of their jurisdiction. Certainly there was sufficient evidence to support a finding of irreparable injury to Painters from their loss of employment opportunities, loss of bargained-for benefits (safety conditions, benefits and wages were being diminished under 'sweetheart' contracts negotiated by Plasterers), and diminution of the Painters' ability to represent its members. The inflexibility of the Department's machinery for resolving this inter-union dispute also leaves the Painters without any opportunity to determine finally the merits of their claims that their work jurisdiction is being diminished contrary to agreement.
 
 
 16
 Appellants also contend that the order issued by Judge Metzner was of improper scope because it exceeded the relief sought and affected entities which have never been participants in the instant proceedings. That order, which required Plasterers to remove its members from pointing and taping drywall surfaces 'wheresoever located,' covered an unlimited geographical area. Clearly the appellees in this action represented Local 1974 and its members who were working or seeking work as drywall tapers within the territorial jurisdiction of the local, an area comprising the five boroughs of New York City and certain parts of Nassau County. The requested injunctive relief specified restraint of Locals 60, 202 and 852 of the Plasterers' International Association, locals which function in the New York City area. Deeming it proper to narrow the scope of the district court's order to comport with the parties involved and the relief sought, we thus limit its force to the geographical area within the jurisdiction of Local 1974.
 
 
 17
 Accordingly, we affirm the order of the district court, as modified, vacate the stay of the injunction, and direct that the mandate issue forthwith.
 
 
 
 [1]
 This decision is reported in the 'Green Book,' Plan For the Settlement of Jurisdictional Disputes in the Construction Industry, at pp. 144--145
 
 
 [2]
 See, Constitution of the Building and Construction Trades Department AFL-CIO; Plan for the Settlement of Jurisdictional Disputes In the Construction Industry
 
 
 [3]
 29 U.S.C. § 185(a) states in material part:
 'Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.'
 
 
 [4]
 29 U.S.C. § 113(c) states:
 'The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.'
 
 
 [5]
 29 U.S.C. § 101 states in pertinent part:
 'No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.'
 29 U.S.C. § 104 states in pertinent part:
 'No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from doing, whether singly or in concert, any of the following acts: * * * (b) Becoming or remaining a member of any labor organization or of any employer organization. . . .'
 
 
 [6]
 29 U.S.C. § 107 in pertinent part requires that the court hear 'the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered,' and that the court make certain findings of fact, i.e., '(t)hat unlawful acts . . . have been committed and will be continued unless restrained . . . (t)hat substantial and irreparable injury to complainant's property will follow; that . . . greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief; (t)hat complainant has no adequate remedy at law; and (t)hat the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.'