**UNITED TELEGRAPH WORKERS, AFL–CIO, and Communication Workers of America, AFL–CIO, Appellees,**

**v.**

**WESTERN UNION CORPORATION, Appellant.**

**No. 85–5257.**

United States Court of Appeals, Third Circuit.

Argued June 21, 1985.

Decided Aug. 26, 1985.

As Amended Sept. 13, 1985.

Isaac N. Groner (argued), Walter H. Fleischer, Alfred F. Belcuore, James A. Bensfield, Cole & Groner, P.C., Washington, D.C., Robert S. Steinbaum, Scarpone & Edelson, P.A., Newark, N.J., for appellee United Telegraph Workers, AFL–CIO.

Ann F. Hoffman, New York City, Steven P. Weissman, Trenton, N.J., for appellee Communications Workers of America, AFL–CIO.

Thomas L. Morrissey (argued), Newark, N.J. (Rosemary J. Bruno, John K. Bennett, Newark, N.J., of counsel; Carpenter, Bennett & Morrissey, Newark, N.J., on brief), for appellant.

Before ADAMS, HUNTER, and MANS-MANN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This case involves the disputed interpretation of a contract between an employer and two unions representing its employees. The district court entered a preliminary injunction supporting the unions' position, but because the court failed to follow the procedural requirements of the Norris-LaGuardia Act the order must be vacated and the case remanded for further proceedings.

### I.

In late 1984, appellant Western Union Corporation fell upon difficult financial times. As part of its efforts to resurrect its economic fortunes, it attempted to renegotiate its agreements with two unions representing bargaining unit employees of its wholly owned subsidiary, Western Union Telegraph Company.[1] The unions, United Telegraph Workers, AFL–CIO, and Communication Workers of America, AFL–CIO, had collective bargaining agreements with Western Union covering over 8,000 employees; the latter labor organization represented workers in the New York City metropolitan area and the former covered employees elsewhere in the United States.

The talks resulted in a "Stipulation" between the parties, signed December 14, 1984. It provided for a temporary 10% wage reduction for all bargaining unit employees earning more than $14,000 per year, with no such employee's salary being lowered below $14,000 annually. The wage reduction was to end no later than July 26, 1985.

In return for these labor concessions, Western Union stated its full "support [of] the concept of employee participation in the management and ownership of the Corporation, the details of which will be subjects of negotiations following from this Stipulation." Stip. § 1.8, App. at 19a. A later portion of the agreement expands on this assurance, and forms the basis of the present dispute:

2.1 The parties agree promptly to enter into good faith negotiations with respect to all aspects of the Corporation's financial health, operations and structure, including but not limited to such additional contract modifications and/or supplements as are proposed by the Corporation or the Unions.

2.2 In order to accomplish this goal, any party may retain the necessary consultants to assist it in performing a complete analysis of the aspects of the Corporation mentioned above.

App. at 19a.

Shortly after the Stipulation was signed, the unions began to request access to financial and other company documents, insisting that inspection of such information was mandated by the Stipulation and a necessary prerequisite to the comprehensive negotiations described in that agree-

1. Both the parent and subsidiary corporations are collectively referred to as "Western Union."

ment. Western Union, however, took the position that "its commitment to negotiate on employee participation in management was clearly not the functional equivalent of a commitment to give the Unions unrestricted access to the same information given to the highest level of management for performance of management's deliberative and decisional responsibilities." Appellant's Br. at 11. Accordingly, the company denied the unions access to "pre-decisional or deliberative documents." *Id.* at 28. These documents included future capital expenditure plans; reports from investment bankers, accountants, and other consultants; and future business plans provided to the Western Union Board of Directors.

Essentially, the unions argue that without all the information they requested they will be unable "to enter into good faith negotiations with respect to all aspects of the Corporation's financial health, operations and structure," and therefore that the contract requires such disclosure. Western Union, on the other hand, points to § 1.1 of the Stipulation, which provides that all provisions of the Collective Bargaining Agreements remain in force except as affected by the temporary wage reductions. Section 2.01 of the Agreements states that "[t]he management of the Company's business [is] vested in the company...."

On March 25, 1985, the unions filed their complaint in this suit, invoking the district court's jurisdiction under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1982), as well as 28 U.S.C. §§ 1331, 1337 (1982). The plaintiffs pleaded breach of contract by and unjust enrichment of Western Union. They sought a temporary and a permanent injunction to prevent Western Union from transferring any assets or entering into any agreement to transfer assets, to force it to end the wage reductions, to bar it from terminating the employment of any bargaining unit employee except on grounds of personal misconduct, and to compel it to provide the unions with all requested information.

The district court judge held a hearing at which he heard arguments on March 25, 1985 from counsel representing the parties, considered briefs filed by the parties during the following week, and then announced his opinion from the bench on April 8, 1985. He decided that the contract is unambiguous, rejecting Western Union's contention that the agreement preserved the company's managerial prerogatives, and ruling that the unions must be provided with all requested information. The judge denied Western Union's request for an evidentiary hearing at which witnesses could testify, stating that the Norris-La-Guardia Act does not require an evidentiary hearing before issuance of an injunction in a labor dispute if the disputed contract is unambiguous.

One conflict was perceived by the district court as inherent in the contract: "the agreement never contemplated ... that management would have to show to the Union documents which reflected on the management's strategy for later collective bargaining between itself and the Union." App. at 316a. Therefore, the judge ruled that such documents may be withheld, pending his *in camera* review of all such information. He issued a preliminary injunction on April 12, 1985, ordering the release of all requested information save that related to collective bargaining negotiations. All other requested relief was denied.

On April 15, 1985, Judge John J. Gibbons of this Court entered an interim stay of the district court order in all respects until a panel of this Court could hear any appeal; on April 30, 1985 this Court issued its own stay pending the appeal, and on June 7, 1985 it granted a motion expediting the appeal. We have jurisdiction to review the district court's order granting in part and denying in part a preliminary injunction, pursuant to 28 U.S.C. § 1292(a)(1) (1982).[2]

---

**2.** Western Union argues that the district court's order was in all respects a final judgment, and

therefore this Court may also assume jurisdiction under 28 U.S.C. § 1291 (1982). Its purpose

## II.

■ A district court's decision to issue a preliminary injunction is committed to its sound discretion, and must be affirmed unless the court has abused its discretion, committed an obvious error in applying the law, or made a serious mistake in considering the proof. *United States v. Price*, 688 F.2d 204, 210 (3d Cir.1982). An abuse of discretion is a "clear error of judgment," and not simply a different result which can arguably be obtained when applying the law to the facts of the case. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

■ In deciding whether to provide preliminary relief, the district court must consider the probability of irreparable injury to the moving party in the absence of such relief, the possibility of harm to the non-moving party if relief is granted, the likelihood that the moving party will ultimately succeed on the merits, and the public interest. *Price, supra*, 688 F.2d at 211.

■ The issuance of preliminary injunctions in cases involving labor disputes is subject to special procedural requirements imposed by the Norris-LaGuardia Act. Notably, Section 7 of the Act, 29 U.S.C. § 107 (1982), mandates that no injunction shall issue "except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered...."[3] Section 1 of the Act, 29 U.S.C. § 101 (1982), provides that no court of the United States has jurisdiction to issue injunctive relief in these cases unless it complies with these procedural rules.

■ One clear purpose of Section 7 is to prohibit employers from halting labor strikes through ex parte applications to federal courts, a frequent occurrence at the time the Act was drafted in 1932. But the legislation also reflects a broader goal of

---

in advancing this proposition is to require the more exacting scrutiny this Court applies to permanent as distinguished from preliminary injunctions. We decline to apply such review in this case. At a status hearing on May 15, 1985, the district court judge did note that "even though my decision was styled in the form of a preliminary injunction hearing, in the absence of any other testimony, I fail to see how, holding the views I hold, I could come to any different result were it to be styled a final injunctive hearing." App. at 348a. However, given that Western Union's request for an evidentiary hearing was denied, and that the court never heard additional testimony, we will not apply the "more searching review" provided for complete injunctive proceedings. *Cf. Rennie v. Klein*, 653 F.2d 836, 841 (3d Cir.1981) (in banc), *vacated and remanded on other grounds*, 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982).

**3.** The entire relevant portion of Section 7 reads:
No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof:

(b) That substantial and irreparable injury to complainant's property will follow:

(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

(d) That complainant has no adequate remedy at law; and

(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property ...

**704**

more current relevance, to prevent judicial interference in management-labor relations except in narrowly defined circumstances where strict procedures are followed. The overriding purpose of federal labor law is to allow the parties, to the extent possible, to settle their own disputes in accordance with their contractual agreements. *See generally Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Marine Cooks & Stewards v. Panama Steamship Co.*, 362 U.S. 365, 80 S.Ct. 779, 4 L.Ed.2d 797 (1960). Thus, while the Norris-LaGuardia Act originally was intended primarily to limit the availability of injunctive relief in labor strikes, *see* Section 4, 29 U.S.C. § 104 (1982), the Section 7 provisions clearly advance current labor policies when applied to any labor dispute. This Court has therefore applied the Section 7 requirements in cases concerning contractual disputes brought under the subsequently enacted § 301(a) of the Labor Management Relations Act of 1947. *United States Steel Corp. v. United Mine Workers*, 456 F.2d 483, 487 (3d Cir.), *cert. denied*, 408 U.S. 923, 92 S.Ct. 2492, 33 L.Ed.2d 334 (1972).[4] Further, to serve the broad congressional purpose the strict requirements of the Norris-LaGuardia Act apply to controversies such as the present one where labor organizations seek injunctions against employers, as well as to cases where the parties stand on an opposite footing. *See United Steelworkers of Am. v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1278 (3d Cir.1979).

■ The key limitation to the application of the Norris-LaGuardia Act is that a case covered by its provisions must be one "involving or growing out of a labor dispute...." § 1, 29 U.S.C. § 101 (1982). Section 13(c) of the Act provides:

The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment....

29 U.S.C. § 113(c) (1982). As the present matter concerns negotiations "seeking to arrange terms or conditions of employment," it falls within the coverage of the Act. The Act's scope is intentionally broad, covering any case, including this matter, in which "the employer-employee relationship [is] the matrix of the controversy." *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n*, 457 U.S. 702, 712–13, 102 S.Ct. 2672, 2680, 73 L.Ed.2d 327 (1982) (quoting *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 147, 62 S.Ct. 520, 522, 86 L.Ed. 750 (1942)).

■ In this proceeding, the district court judge issued a preliminary injunction without holding the evidentiary hearing required by the Act. We also note, although the parties failed to address this point, that the court did not file findings of fact prior to issuing its order, as required by Section 7 and by Section 9 of the Norris-LaGuardia Act, 29 U.S.C. § 109 (1982). Because of this non-compliance with Sections 7 and 9 of the Act, the court was without jurisdiction to enter its order. "Strict adherence to the Act's procedures is not a mere matter of form: A district court has no *jurisdiction* under the Norris-LaGuardia Act to issue a labor injunction without adhering to the explicit terms of the Act." *In re District No. 1—Pacific Coast District, Maine Engineers' Beneficial Ass'n*, 723 F.2d 70, 76–77 (D.C.Cir.1983) (emphasis in original). *See also Northern Stevedoring & Handling Corp. v. International Longshoremen's & Warehousemen's Union*, 685 F.2d 344, 350 (9th Cir.1982).

### III.

The unions urge that Western Union failed to present any issue of material fact,

---

**4.** The one exception fashioned by the Supreme Court is for suits seeking specific performance of a contractual agreement to arbitrate labor disputes. In *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Court held that because of the clear congressional intent in the Labor Management Relations Act to enforce such agreements, an injunction may issue in such cases without satisfaction of the Section 7 requirements. *Id.* at 458–59, 77 S.Ct. at 918–19.

and as a result was not entitled to the hearing described in Section 7. Several cases from this and other circuits, they argue, create an exception from the facially clear provisions of the Act where the relevant facts are undisputed or would not be enlightened by oral testimony. Because there are in the record clearly disputed facts and issues we need not decide whether such an exception exists.

The principal authority cited by the unions is *Celotex Corp. v. Oil, Chemical & Atomic Workers Int'l Union*, 516 F.2d 242 (3d Cir.1975). *Celotex* differs from the present case, however, because the Court there issued a temporary restraining order, and a separate provision in Section 7 permits such orders to be entered in some circumstances without a full hearing. The Court noted that "the preferred course" is to hear live testimony even before issuing a temporary restraining order, although it stated that on certain issues, such as the existence of a contractual relationship or the violation of a clear contractual provision, such testimony may be unnecessary and affidavits may suffice. *Id.* at 247–48.

Decisions in other circuits in cases involving injunctive relief would appear to provide stronger support for the unions' position.

In *Local Lodge No. 1266 v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981), the court held that "in the peculiar facts of the instant case" the district court was not required to follow the Section 7 requirements before issuing a preliminary injunction. The facts underlying the request for injunctive relief were essentially undisputed; for example, at no time did the employer's counsel express any disagreement with any of the union's affidavits. Further, time was of the essence; the employer's challenged sale of a division and dismissal of 113 employees were scheduled for the day following the hearing. Finally, the employer's counsel was offered but declined an opportunity for a full evidentiary hearing. *Id.* at 290–91.

Similarly, in *Drywall Tapers & Pointers v. Operative Plasterers' and Cement Ma-sons' Int'l Ass'n*, 537 F.2d 669 (2d Cir. 1976), the court sanctioned a limited hearing where "both sides submitted voluminous affidavits" before the judge's rulings and the appellants "were obviously content to rest on that evidence as they never requested a further hearing." *Id.* at 674. Further, the court found that the validity of the contract, a central issue in the case, "was not a question that would be subject to greater elucidation by live testimony." *Id.*

The Second Circuit also hypothesized in dictum, in *Hoh v. Pepsico, Inc.*, 491 F.2d 556 (2d Cir.1974), that "a court might issue an injunction against an employer without taking testimony if on the undisputed facts the balance tipped decisively in favor of the unions and the other criteria governing the issuance of injunctions were met." *Id.* at 560. In *Railway Express Agency, Inc. v. Brotherhood of Railway, Airline & Steamship Clerks*, 437 F.2d 388 (5th Cir. 1971), the court held that where resolution of the few disputed facts in favor of the appellants would not affect the nature of the controversy, Section 7 did not require an evidentiary hearing.

Even were we to accept the rulings of the Second, Fifth, and Seventh Circuits, which we need not decide at this time, our conclusion would not change. First, unlike the appellants in *Panoramic* and in *Drywall Tapers*, Western Union was adamant in its repeated demands before the district court for a hearing in compliance with Section 7. Second, the time pressures facing the parties were not as severe as in *Panoramic*. The Stipulation called for certain negotiations, and the unions maintain that those talks cannot begin until they receive the requested disclosures. While those negotiations are undoubtedly important, they are not so pressing as to justify avoiding the short delay that would be occasioned by an evidentiary hearing.

Third, and most importantly, the parties' pleadings, affidavits and briefs clearly present factual disputes which are properly addressed by live testimony. In such a situation, all courts enforce the Section 7

requirements. *International Union, United Automobile, Aerospace & Agricultural Implement Workers of Am. v. LaSalle Machine Tool, Inc.*, 696 F.2d 452, 456–57 (6th Cir.1982).

The principal factual dispute concerns whether Western Union is required to disclose financial information, and if so, which specific documents it must reveal. *Compare* Brief in Support of Plaintiffs' Motions for Temporary Restraining Order & Preliminary Injunction 12–13, App. at 62a–63a, *with* Affidavit of Richard C. Hostetler 2, App. at 250a. The district court decided that the Stipulation was unambiguous in this regard, and required release of nearly all the information the unions requested. It applied the test outlined in *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001 (3d Cir.1980):

> "It is the role of the judge to consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning. The trial judge must then determine if a full evidentiary hearing is warranted. If a *reasonable* alternative interpretation is suggested, even though it may be alien to the judge's linguistic experience, objective evidence in support of that interpretation should be considered by the fact finder."

*Id.* at 1011 (emphasis in original). The district court determined that Western Union's proffered explanation, reading the Collective Bargaining Agreements' management provision into the Stipulation and thereby reserving certain decisional documents, was not reasonable.

We find clearly erroneous the determination that the contract is unambiguous as a matter of law on the required disclosure of information. While we cannot say that the interpretation by Western Union is the correct one, the company presents a disputed factual question that calls for further inquiry. Its construction is certainly in accord with the interpretational maxim that a "writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together." *Banco Urban Renewal Corp. v. Housing Authority of Atlantic City*, 674 F.2d 1001, 1009 (3d Cir.1982) (quoting Restatement (Second) of Contracts § 202(2) (1981)).

■ The Stipulation provided for "good faith negotiations with respect to all aspects of the Corporation's financial health, operations and structure," and allowed each side to retain consultants to perform a "complete analysis" on these matters and aid in such negotiations. While the unions may be correct that this agreement contemplates full disclosure, such intent is not clear from the contract itself. The parties may discuss 'all financial aspects' without Western Union's revealing every financial document in its possession. The district court essentially acknowledged the difficulty in finding a disclosure requirement in the contract's ambiguous language, when it crafted an exception for documents related to collective bargaining without any explicit guidance from the parties or the contract itself concerning the parties' intent on this issue.

The contract is therefore not completely clear and even under the case law outlined above Western Union has a statutory right to an evidentiary hearing.[5] The court's denial of such a hearing was an abuse of discretion. Indeed, under the facts here a hearing was required before issuance of a preliminary injunction even in the absence of Section 7. Fed.R.Civ.P. 65 requires such a hearing whenever the affidavits present factual disputes and the adverse party so

---

5. All of the district court's discussion of the merits focused on the proper interpretation of the contract, an inquiry directed to the "likelihood of success" prong of the standard for a preliminary injunction. The parties did not raise any dispute concerning the other elements of that standard, such as the degree of harm to each side depending on whether relief is grant-ed. Consequently, we assume there are no factual disagreements on those points. However, these issues often present disputes which are best elucidated through live testimony. *Celotex, supra*, 516 F.2d at 247–48. Therefore, an evidentiary hearing conducted pursuant to Section 7 should properly consider these issues as well.

requests. *Professional Plan Examiners of N.J., Inc. v. LeFonte*, 750 F.2d 282, 288 (3d Cir.1984); *see also Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3d Cir. 1982).

■ Finally, the unions maintain that Western Union was not entitled to a hearing because it never specified which witnesses it would call to testify. A detailed list, however, is not absolutely essential. The case law in other circuits merely requires that factual disputes exist which would properly be determined following live testimony. Western Union's affidavits adequately outlined the disputed issues, and it may be assumed that the affiants— managers of and a consultant to the company—are among the likely witnesses at a hearing.

#### IV.

We express no views regarding the present contractual dispute. Rather, we hold only that it must be adjudicated in accordance with the procedural provisions of the Norris-LaGuardia Act and the Federal Rules of Civil Procedure. Western Union is entitled to an evidentiary hearing, at which witnesses may testify, to aid the court in its resolution of the unions' motion for injunctive relief.

The district court's order will be vacated and the matter remanded for further proceedings in accordance with this opinion.[6]

---

**6.** Following oral argument in this case and the preparation of this opinion, counsel for United Telegraph Workers, AFL–CIO, informed the court in a letter dated August 15, 1985 that it had agreed with Western Union, pending rat-ification by its membership, to withdraw from this litigation. On the same date, counsel for Communications Workers of America, AFL–CIO, wrote to the court that it is continuing to pursue the case.