**RETAIL CLERKS UNION LOCAL 1222, AFL-CIO, et al., Appellants,**

v.

**ALFRED M. LEWIS, INC., et al., Appellee.**

No. 17724.

United States Court of Appeals
Ninth Circuit.

Feb. 3, 1964.

Arnold, Smith & Schwartz, George L. Arnold, Kenneth M. Schwartz, and Laurence D. Steinsapir and Peter Aronson, Los Angeles, Cal., for appellants.

Gibson, Dunn & Crutcher, William French Smith, William F. Spalding, and Willard Z. Carr, Jr., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

The appeal in this action is from an order dismissing the action "for lack of jurisdiction over the subject matter." The order was based entirely upon the complaint. Plaintiffs and appellants are a retail clerks' union and its secretary. Defendants and appellees are a number of concerns, each of which is alleged to have entered into a collective bargaining agreement with the union. The individual plaintiff, secretary of the union, alleges that he fairly and adequately represents the interests of the union and of all members of the bargaining unit, who are too numerous to be named and brought before the court individually. It is alleged that there are approximately 3,000 employees covered by the agreements.

The dispute arises out of Article VI, paragraph 2 of the agreements which provides for a cost of living wage adjustment "beginning April 1, 1961 and on each April 1 and October 1 thereafter." In essence, the paragraph provides for an upward adjustment based upon the Bureau of Labor Statistics consumer price index for Los Angeles on such dates, as compared with such index for November, 1958. It is further alleged that an upward adjustment became payable (1 cent per hour for all employees except box boys and ½ cent per hour for box boys) on April 1, 1961, and that the defendant employers have failed and refused to comply with the agreement by making this upward adjustment on that date. In a second count of the complaint the same allegations are repeated, and it is further alleged that a dispute has arisen between the parties as to the dates on which, or as of which, the cost of living increase is to be computed. The plaintiffs prayed for a judgment requiring the defendants to comply with the agreement by making the required cost of living adjustment retroactive to April 1, 1961, or in the alternative, for declaratory judgment that April 1, 1961 is the date for computing and paying the cost of living increase.

The court based its grant of the defendants' motion to dismiss upon two grounds, each of which is here claimed to support the judgment.

The first ground is that the action is, in essence, an attempt by the union to enforce individual wage claims of its members and that such an action does not fall within the jurisdiction conferred upon the district court by section 301(a) of the Labor-Management Relations Act (29 U.S.C. § 185(a)) [1] Appellees rely upon Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 and subsequent lower court decisions that rely upon it.

We think that, by reason of certain recent decisions of the Supreme Court, this contention of appellees is a short horse that is soon curried. In Smith v. Evening News Ass'n, 1962, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, an individual employee, a member of a union having a collective bargaining contract with the defendant employer, brought an action on his own behalf and as an assignee of 49 other members, in a state court [2] for breach of a collective bargaining contract. He charged that other employees belonging to a different union were on strike, and that the employer allowed non-union employees to work, but did not permit him and his assignors to work, in violation of a clause in the contract stating: "[T]here shall be no discrimination against any employee because of his membership or activity in the Guild."

1. "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

2. The Smith case is nevertheless apropos, because it has been held that state and federal courts have concurrent jurisdiction in section 301 cases. Dowd Box Co. v. Courtney, 1962, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483.

There it was sought to uphold a judgment of dismissal in reliance upon the Westinghouse case, but the Court, in an opinion by Mr. Justice White, said:

"However, subsequent decisions here have removed the underpinnings of Westinghouse and its holding is no longer authoritative as a precedent. Three of the Justices in that case were driven to their conclusion because in their view § 301 was procedural only, not substantive, and therefore grave constitutional questions would be raised if § 301 was held to extend to the controversy there involved. However, the same three Justices observed that if, contrary to their belief, 'Congress has itself defined the law or authorized the federal courts to fashion the judicial rules governing this question, it would be self-defeating to limit the scope of the power of the federal courts to less than is necessary to accomplish this congressional aim.' Id. [348 U.S.], at 442 [75 S. Ct. at 99 L.Ed. 510]. Textile Workers [Union] v. Lincoln Mills, 353 U. S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972], of course, has long since settled that § 301 has substantive content and that Congress has directed the courts to formulate and apply federal law to suits for violation of collective bargaining contracts. There is no constitutional difficulty and § 301 is not to be given a narrow reading. Id. [353 U.S.], at 456, 457 [77 S.Ct. at 917, 918, 1 L.Ed.2d 972]. Section 301 has been applied to suits to compel arbitration of such individual grievances as rates of pay, hours of work and wrongful discharge, Textile Workers [Union] v. Lincoln Mills, supra; General Electric Co. v. Local 205, UEW, 353 U.S. 547 [77 S.Ct. 921, 1 L.Ed.2d 1028]; to obtain specific enforcement of an arbitrator's award ordering reinstatement and back pay to individual employees, United Steelworkers [of America] v. Enterprise Wheel & Car Corp., 363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424]; to recover wage increases in a contest over the validity of the collective bargaining contract, Dowd Box Co. v. Courtney, supra; [1962, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483] and to suits against individual union members for violation of a no-strike clause contained in a collective bargaining agreement. Atkinson v. Sinclair Refining Co., supra. [1962, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed. 2d 462]

"The concept that all suits to vindicate individual employee rights arising from a collective bargaining contract should be excluded from the coverage of § 301 has thus not survived. The rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts. Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law. This we are unwilling to do."

There was only one dissent. In accord is General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Russ & Company, 1963, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 in which the Court expressly repeated its statement regarding Westinghouse, that "its holding is no longer authoritative as a precedent." (See also International Union, United Auto, Aircraft and Agr. Implement Workers of America, UAW, A.F.L.–C.I.

O. v. Textron, Inc., 6 Cir., 1963, 312 F.2d 688).

■■ The type of case here before us comes precisely within the terms of section 301(a); it also falls within its policy, which is to make collective bargaining agreements enforceable in the district courts.

In Dowd Box Co. v. Courtney, 1962, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483, the Supreme Court said:

"The Labor Management Relations Act of 1947 represented a far-reaching and many-faceted legislative effort to promote the achievement of industrial peace through encouragement and refinement of the collective bargaining process. It was recognized from the outset that such an effort would be purposeless unless both parties to a collective bargaining agreement could have reasonable assurance that the contract they had negotiated would be honored. Section 301(a) reflects congressional recognition of the vital importance of assuring the enforceability of such agreements."

The alternative would be to require each of the 3,000 or so employees involved to file suits in the state court, and there would, at least, be a question as to whether one or more of them could represent the others. To require separate suits, perhaps as many as 3,000, each involving back wages amounting to 1 cent or ½ cent per hour, does not seem to us to be sensible administration of justice. Moreover, such a relegation of individual employees or groups of employees to separate suits would defeat the purpose of section 301(a). The objective being to secure enforcement of *collective* bargaining agreements, the parties to those agreements, i. e., the union and the employer, should be the primary enforcing parties, rather than individual employees who are beneficiaries of, but not parties to, the agreements. Benefits flow to them from the performance of the agreement; obligations are imposed on them by it; that is what they expect when they authorize the union to bargain for them. It would be a rude shock to them, and could well weaken their confidence in the union, in the agreement, and in the collective bargaining process, to find that the union could not enforce the agreement, and that each of them was expected to resort, individually, to the courts, if the agreed upon wages were not paid to them.

We do not suggest that an employee whose employment is covered by a collective bargaining agreement has no remedy of his own if the employer fails to pay him a wage increase provided for in the agreement. Whether his remedy, as an individual, is by suit or through a proceeding established by the agreement may depend upon the terms of the agreement. If the union is prosecuting an action such as the one before us, we presume that the court's power would extend to the prevention of separate suits, by individual members of the union, to obtain the same result. The prevention of a multiplicity of suits is an old head of equity jurisdiction. Nor need we consider whether the union could maintain an action where the only claimed violation was failure to pay the wage increase to a particular employee, or particular employees, when the employer recognized and carried out his obligation toward employees as a group, but claimed that particular facts, peculiar to the employees involved, as individuals rather than as members of the bargaining unit, excused performance as to them. This is not such a case. Even in such a case, the terms of the collective bargaining agreement might settle the question.

Under the circumstances, we think it unnecessary for us to decide whether decisions of other circuits relied upon by appellee, or our own decision in Silverton v. Valley Transit Cement Co., 9 Cir., 1957, 249 F.2d 409, are distinguishable. In Silverton, we relied upon Westinghouse which, as the Supreme Court has said, is no longer authoritative.

■ The other ground upon which the trial court rested its decision is that

the complaint seeks, in substance, a mandatory injunction, and that this is prohibited by the Norris-LaGuardia Act (29 U.S.C. § 101 et seq.) While the writer of this opinion agrees with the view expressed by the 7th Circuit in Brotherhood of Locomotive Engineers v. Baltimore & Ohio R. Co., 7 Cir., 1962, 310 F.2d 513 that the purpose of Norris-LaGuardia was to protect only employees and unions, except for two isolated exceptions appearing in section 3(a, b), (29 U.S.C. § 103(a, b)), and in section 4(b), (29 U. S.C. § 104(b)), it is not necessary for us in this case to go so far. We do not think that an order directing an employer to comply with a collective bargaining contract, in a setting in which none of the things described in the Norris-LaGuardia Act has occurred, even though it might technically be called an injunction, is the kind of an injunction contemplated by that Act. It certainly does not fall within the purposes of the Act as stated in section 2 (29 U.S.C. § 102).

The Supreme Court has not passed upon the question that is before us. Tending to support our views is Textile Workers of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. There, the action was by a union against an employer. The Court held, in an opinion by Mr. Justice Douglas, that section 301(a) "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements." (353 U.S. p. 451, 77 S.Ct. p. 915, 1 L.Ed.2d 972.)

As to the Norris-LaGuardia Act, the Court said:

"The question remains whether jurisdiction to compel arbitration of grievance disputes is withdrawn by the Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C. § 101. Section 7 of that Act prescribes stiff procedural requirements for issuing an injunction in a labor dispute. The kinds of acts which had given rise to abuse of the power to enjoin are listed in

§ 4. The failure to arbitrate was not a part and parcel of the abuses against which the Act was aimed. Section 8 of the Norris-LaGuardia Act does, indeed, indicate a congressional policy toward settlement of labor disputes by arbitration, for it denies injunctive relief to any person who has failed to make 'every reasonable effort' to settle the dispute by negotiation, mediation, or 'voluntary arbitration.' Though a literal reading might bring the dispute within the terms of the Act (see Cox, Grievance Arbitration in the Federal Courts, 67 Harv.L.Rev. 591, 602–604), we see no justification in policy for restricting § 301(a) to damage suits, leaving specific performance of a contract to arbitrate grievance disputes to the inapposite procedural requirements of that Act."

We think this reasoning equally applicable here, although the case for holding that Norris-LaGuardia does not apply to a decree requiring arbitration is perhaps a little stronger, in view of the language of section 8 of that Act, (29 U.S.C. § 108) referred to above by Mr. Justice Douglas. But surely section 301, as the review of its legislative history which is set forth in Mr. Justice Douglas' opinion shows, is not limited, in its strong policy of "promoting collective bargaining that ended with agreements not to strike" (353 U.S. p. 453, 77 S.Ct. p. 916, 1 L.Ed.2d 972), and of making such agreements "equally binding and enforceable on both parties." (353 U.S. p. 454, 77 S.Ct. p. 916, 1 L.Ed.2d 972), to agreements to arbitrate. At the least, Lincoln Mills seems to us to require a construction of Norris-LaGuardia that will give as great a scope to section 301 as can fairly be said to be consistent with Norris-LaGuardia.

In Lincoln Mills, Mr. Justice Douglas also said:

"The congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes being clear, there is no reason to submit

them to the requirements of § 7 of the Norris-LaGuardia Act."

The same is true here. We cannot believe that Norris-LaGuardia was intended to apply to a remedy such as is here involved. Anyone who lived through the times in which Norris-LaGuardia was enacted in 1932 cannot but know that it was directed primarily at the then widespread use of the labor injunction as a means of defeating the efforts of labor to organize and bargain collectively. See, for example, Frankfurter and Greene, "The Labor Injunction." We are confident that the sort of remedy against an employer, to enforce a collective bargaining contract, that is here involved, had not occurred to anyone in those troubled times as being within the sweep of the Act. Even Mr. Justice Frankfurter, who dissented at his usual length in Lincoln Mills, did not rest his dissent on Norris-LaGuardia.

Lincoln Mills was followed in General Electric Co. v. Local 205, UEW, 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028.

The next significant cases are Sinclair Refining Co. v. Atkinson, 1962, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 and Atkinson v. Sinclair Refining Co., 1962, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462. In Sinclair Refining, the employer sought to enjoin work stoppages and strikes that were claimed to be in violation of a no-strike and arbitration provision of a collective bargaining contract. The Court held that such an injunction was improper, because the action did involve a "labor dispute" as defined in section 13 of Norris-LaGuardia (29 U.S. C. § 113) and the conduct complained of fell within the conduct described in section 4 (29 U.S.C. § 104). It also expressly held that section 301 did not repeal or modify Norris-LaGuardia in this respect. It found a congressional intent "to retain completely intact the anti-injunction prohibitions of the Norris-LaGuardia Act in suits brought under § 301." (370 U.S. p. 210, 82 S.Ct. p. 1337, 8 L.Ed.2d 440) But it also distinguished Lincoln Mills, using the following language:

"There the Court held merely that it did not violate the anti-injunction provisions of the Norris-LaGuardia Act to compel the parties to a collective bargaining agreement to submit a dispute which had arisen under that agreement to arbitration where the agreement itself required arbitration of the dispute. In upholding the jurisdiction of the federal courts to issue such an order against a challenge based upon the Norris-LaGuardia Act, the Court pointed out that the equitable relief granted in that case—a mandatory injunction to carry out an agreement to arbitrate—did not enjoin any one of the kinds of conduct which the specific prohibitions of the Norris-LaGuardia Act withdrew from the injunctive powers of United States courts. An injunction against work stoppages, peaceful picketing or the nonfraudulent encouraging of those activities would, however, prohibit the precise kinds of conduct which subsections (a), (e) and (i) of § 4 of the Norris-LaGuardia Act unequivocally say cannot be prohibited.

\* \* \* \* \* \*

"At the most, what is involved is the question of whether the employer is to be allowed to enjoy the benefits of an injunction along with the right which Congress gave him in § 301 to sue for breach of a collective agreement. And as we have already pointed out, Congress was not willing to insure that enjoyment to an employer at the cost of putting the federal courts back into the business of enjoining strikes and other related peaceful union activities."

This is a far cry from a holding that a case like that now before us falls within Norris-LaGuardia. We think that the Court's opinion meant what it said when it spoke of conduct "which the specific prohibitions of the Norris-LaGuardia

Act withdrew from the injunctive powers of United States courts." And we think that this case does not involve such conduct. We think it particularly significant that Mr. Justice Brennan, speaking for himself and Justices Douglas and Harlan, treated the decision as indicating that, while conduct falling within section 4 of Norris-LaGuardia cannot be enjoined in a section 301 case, the same is not true of section 7 of Norris-LaGuardia (370 U.S. pp. 219–220, 82 S.Ct. pp. 1341–1342, 8 L.Ed.2d 440).

Here we cannot find any "specific provision" of the Norris-LaGuardia Act defining conduct that would be "enjoined" by the type of "injunction" sought in this case. The appellees point to section 4(c) (29 U.S.C. § 104(c)), but we think it not applicable. We find nothing in its language, which refers primarily to "strike or unemployment benefits or insurance," that specifically bars an order directing an employer to carry out a provision in a collective bargaining contract relating to wages. In this case we have a "labor dispute," as defined in section 13, only in the most refined and technical sense. There is nothing in the complaint to suggest that either party is here using its economic powers in any way to bring pressure upon the other. Here, there is a mere disagreement as to the meaning and effect of certain terms of the contract. This we think, is not the type of "labor dispute" to which Norris-LaGuardia is directed. On its facts, this case is much closer to Lincoln Mills than it is to Sinclair Refining.

In view of Lincoln Mills, supra, and of Smith v. Evening News Ass'n, quoted supra, we cannot hold that appellants must comply with section 7 of Norris-LaGuardia (29 U.S.C. § 107), even though the dispute here involved arguably falls within the literal language of section 13 (29 U.S.C. § 113). If Norris-LaGuardia deprives the court of jurisdiction in a case such as this, then, it seems to us, some of the decisions cited by the Supreme Court in support of its holding in Smith v. Evening News Ass'n, supra,[3] and especially Lincoln Mills, must have been wrongly decided. Yet there is not a word in the opinion in Sinclair Refining Co., supra, casting doubt upon the correctness of any of those decisions, which are cited with approval in Smith. It is true that Norris-LaGuardia was not considered in Smith, but we cannot attribute to the Supreme Court an intention to perpetuate decisions that permit suits under section 301 when such suits are, in its view, not permissible by reason of Norris-LaGuardia.

■ Our view is that we must hold, under Lincoln Mills and Sinclair Refining, when read with Smith, that if conduct sought to be compelled does not fall within the "specific provisions" of Norris-LaGuardia, but the suit does fall within section 301, then Norris-LaGuardia does not apply to the suit at all. Insofar as Publishers' Ass'n of N. Y. City v. New York Mailers Union, 2 Cir., 1963, 317 F.2d 624, cert. granted, 375 U.S. 901, 84 S.Ct. 192, 11 L.Ed.2d 142, may be thought to be contrary to the views here expressed, we decline to follow it.

Moreover, as Sinclair Refining and its companion case, Atkinson, supra, show, even if we are in error as to the first count in the present case, which seeks specific enforcement, the court could still proceed under the second count, which seeks, not an injunction, but only declaratory relief. Cf. Publishers' Ass'n of N. Y. City v. New York Mailers Union, supra.

We hold that the court had jurisdiction under section 301 of the Labor-Management Relations Act, as amended, and that the Norris-LaGuardia Act did not deprive the court of jurisdiction to grant any of the relief prayed for in the complaint.

The order is reversed and the matter is remanded for further proceedings not inconsistent with this opinion.

**3.** Dowd Box Co., cited in Smith, is not here in point, as it involved an action in a state court. There, the Supreme Court reserved the question as to whether Norris-LaGuardia applies to such a case.