Glenn SCHUCK; Robert Lane; Bruce Schmidt; Marilyn McGahan, for themselves and all persons similarly situated, Plaintiffs/Appellants,

v.

GILMORE STEEL CORP., d/b/a Oregon Steel Mills, a Delaware corporation, Defendant/Appellee.

No. 84–4154.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 5, 1985.

Decided March 11, 1986.

---

Gregory A. Hartman, Willner, Bennett, Hartman & Tauman, Portland, Or., for plaintiffs/appellants.

Jack B. Schwartz, Portland, Or., for defendant/appellee.

Before FLETCHER and BOOCHEVER, Circuit Judges, and THOMPSON,* Senior District Judge.

BOOCHEVER, Circuit Judge:

Glenn Schuck and other union members (plaintiffs), sued to enjoin their employer, Gilmore Steel Corp., (defendant) from an alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982). The district court dismissed the action for lack of subject matter jurisdiction and for failure to state a claim. We hold that the district court had jurisdiction but affirm the dismissal for failure to state a claim.

## I. BACKGROUND

Defendant negotiated a series of pension agreements with plaintiffs' union to provide retirement benefits to its employees. The agreement at issue here (the Pension Agreement) became effective in September 1980. It provided, in pertinent part, that the company was free to determine how the retirement benefits would be funded.

Under the authority of this provision, the company established a Trust Agreement between itself and three individual trustees. That agreement provided that if erroneous actuarial calculations caused the funds in the trust to exceed the amount required to pay benefits under the Pension Agreement, then the excess funds would be returned to the company upon termination of the Pension Agreement. The Pension Agreement provided that it was subject to termination upon 120 days' written notice by either party.

On September 1, 1983, the collective bargaining agreements between the company and plaintiffs' union expired. On September 3, the company gave the union the required notice that it would terminate the Pension Agreement on December 31. On September 9, the union commenced a strike at the company's steel mill. Pension coverage was a subject of negotiation in numerous meetings between the company and the union.

Plaintiffs argue that ERISA, 29 U.S.C. § 1103(c)(1) (1982), prohibits the reversion of excess funds to the company.[1] Defendant does not dispute that ERISA applies to this pension plan but contends that it has fulfilled the requirements of an exception to section 1103(c)(1) which permits reversion. 29 U.S.C. § 1344(d)(1) (1982). The district court dismissed the complaint, holding that the Norris-LaGuardia Act of 1932, 29 U.S.C. §§ 101–115 (1982), deprived the court of jurisdiction to award the injunctive relief plaintiffs sought, and that, in any event, the exception permitting reversion applied.

## II. DISCUSSION

### A. Jurisdiction

The jurisdictional questions involved here are issues of statutory construction which

---

* Hon. Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

1. Plaintiffs do not dispute that the trust fund contains assets in excess of the company's liabilities under the Pension Agreement. We have no issue before us as to the amount of such excess.

this court reviews de novo. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Plaintiffs sought an injunction prohibiting termination of the Pension Agreement and the reversion of excess funds to the company. The Norris-LaGuardia Act, 29 U.S.C. § 104(c) (1982) provides that:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute ... from doing, whether singly or in concert, any of the following acts:

. . . .

(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value....

On the basis of this language, the district court held that it did not have jurisdiction to issue the requested injunction.

In applying section 104(c) to this case the district court presumably interpreted the requested injunction as prohibiting the company[2] from paying itself[3] the trust funds. Plaintiffs argue that this type of payment is not described in section 104(c) and can therefore be enjoined. They reason that the subsection's reference to the payment of "other moneys or things of value" must be interpreted in light of its more specific reference to "strike or unemployment benefits or insurance." This court has so held.

In *Retail Clerks Union Local 1222 v. Alfred M. Lewis, Inc.,* 327 F.2d 442 (9th Cir.1964), plaintiff union sued to require an employer to comply with a contractual provision that granted cost of living wage adjustments to employees. Although the requested injunction required the payment of money to the employees, the court held that

we cannot find any "specific provision" of the Norris-LaGuardia Act defining conduct that would be "enjoined" by the type of "injunction" sought in this case. The appellees point to section 4(c) (29 U.S.C. § 104(c) ), but we think it not applicable. We find nothing in its language, which refers primarily to "strike or unemployment benefits or insurance," that specifically bars an order directing an employer to carry out a provision in a collective bargaining contract relating to wages.

*Id.* at 448; *see also Local 2750, Lumber & Sawmill Workers Union v. Cole,* 663 F.2d 983, 986 (9th Cir.1981) (explaining *Alfred M. Lewis*); *Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1124–25 (6th Cir.1981) (same), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982).

Subsequent cases have confirmed that the list of acts protected from injunction by section 104 should be interpreted with reference to the congressional purpose behind the Norris-LaGuardia Act. *See, e.g., Local 2750,* 663 F.2d at 985–86 (section 104(a) ); *Drywall Tapers & Pointers, Local 1974 v. Operative Plasterers' International Association,* 537 F.2d 669, 673–74 (2d Cir.1976) (section 104(b) ); *see also Alfred M. Lewis,* 327 F.2d at 447; *Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886, 919 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963). That purpose was to prevent "the then widespread use of the labor injunction as a means of defeating the efforts of labor

---

**2.** Because the company was named as defendant, it and not the trustee was to be enjoined.

**3.** The language of the request to "order[ ] the company to ... [c]ontinue the pension plan for the benefit of participants and not take any actions to terminate the plan," precludes the other plausible interpretation of the injunction:

to require the company to pay the surplus to the participants.

The injunction would also have *required* the company to "[t]urn over all assets of the pension plan to [an] independent administrator." Section 104, however, withholds jurisdiction only for injunctions which "prohibit" specified actions.

to organize and bargain collectively." *Alfred M. Lewis,* 327 F.2d at 447; *see also Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 251, 90 S.Ct. 1583, 1592–93, 26 L.Ed.2d 199 (1970) (Congress attempted to correct the abuses that had resulted from the interjection of the federal judiciary into union-management disputes on the behalf of management); *Virginian Ry. Co. v. System Federation No. 40,* 300 U.S. 515, 563, 57 S.Ct. 592, 607, 81 L.Ed. 789 (1937) (the evident purpose of the act was to "forbid blanket injunctions against labor unions"). In this case, construing the Act to allow jurisdiction to enjoin the company is entirely consistent with that purpose.[4]

B. Merits

Before granting the company's "motion to dismiss for failure to state a claim," the district court reviewed the Pension Agreement and Trust Agreement, which were not contained in or attached to plaintiffs' complaint. In addition, it did not explicitly exclude an affidavit submitted by the company in support of its motion. In these circumstances, the district court was required to treat the motion as one for summary judgment and dispose of it according to Fed.R.Civ.P. 56. *See Timberlane Lum-*

*ber Co. v. Bank of America,* 549 F.2d 597, 601–02 (9th Cir.1976); *Erlich v. Glasner,* 374 F.2d 681, 683 (9th Cir.1967); Fed.R. Civ.P. 12(b). Although the district court stated that it was granting a motion to dismiss for failure to state a claim, plaintiffs do not argue that the court failed to observe the procedure required for Rule 56. They argue, in essence, that four issues of material fact prevented the court from disposing of the case.[5] In addition, they argue that the evidence considered by the court establishes that reversion of excess funds to the company is barred by ERISA. We address these arguments in reverse order. We review de novo the grant of a motion for summary judgment. *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983).

1. *Reversion*

■ 29 U.S.C. § 1103(c)(1) (1982) provides that

Except as provided [under, among other provisions, 29 U.S.C. § 1344], the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

---

**4.** The company's response to this argument is fragmented and vague. First, the company only argues that "Norris-LaGuardia limits federal jurisdiction over attempts by unions or employees to enjoin management, as well as by management to enjoin unions or employees." This proposition does not disprove that section 104(c) is inapplicable to the case at bar. Second, the cases it cites to "undercut[ ]" the holding of *Alfred M. Lewis* are inapposite. The company contends that in *L.A. Concrete Pumping, Inc. v. Majich,* 483 F.2d 524 (9th Cir.1973), this court "applied ... Norris-LaGuardia to proceedings seeking to enjoin employers." In fact, the opinion indicates that appellant company had asked this court to reinstate an injunction *against individuals.* The other two cases cited were decided under a different provision—29 U.S.C. § 107, which establishes procedural and factual prerequisites to the issuance of any injunction in a case involving a labor dispute. *Amalgamated Transit Union, Division 1384 v. Greyhound Lines, Inc.,* 529 F.2d 1073, 1078 (9th Cir.), *vacated,* 429 U.S. 807, 97 S.Ct. 43, 50 L.Ed.2d 68 (1976), *rev'd,* 550 F.2d 1237 (9th

Cir.), *cert. denied,* 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977); *UAW v. LaSalle Machine Tool, Inc.,* 696 F.2d 452, 458 (6th Cir.1982). The district court in this case did not rely upon section 107, and the company does not argue it is an alternative ground for affirmance.

Because we find jurisdiction on the ground indicated, there is no need to address plaintiffs' broader arguments that ERISA creates an exception to the Norris-LaGuardia Act or that the latter Act must be "accommodated" to it. *See National Association of Letter Carriers v. Sombrotto,* 449 F.2d 915, 919 (2d Cir.1971) (Friendly, J.) (only when acts sought to be enjoined "are specifically protected by the Norris-La-Guardia Act is there a need for the federal courts to seek to accommodate" it and the Landrum-Griffin Act). Neither need we decide whether this case is one "involving or growing out of any labor dispute." 29 U.S.C. § 104.

**5.** The mere fact that the company's motion was required to be construed as one for summary judgment does not entitle plaintiffs to unlimited discovery. *Timberlane,* 549 F.2d at 602.

29 U.S.C. § 1344(d)(1) (1982), in turn, creates the following exception to that prohibition.

Any residual assets of a single-employer plan may be distributed to the employer if—

(A) all liabilities of the plan to participants and their beneficiaries have been satisfied,

(B) the distribution does not contravene any provision of law, and

(C) the *plan* provides for such a distribution in these circumstances. (emphasis added)

Plaintiffs argue that the plan here did not provide for reversion to the company. Article IX(C) of the Trust Agreement explicitly states that "[a]ny Trust funds not required to satisfy all liabilities ... for benefits because of erroneous actuarial calculations shall be returned to the Company." Plaintiffs, however, contend that the Pension Agreement, alone, constitutes "the plan" for purposes of section 1344(d)(1)(C). Because the Pension Agreement is "silen[t] on the matter" and "makes no reference to the Trust Agreement and incorporates none of its terms," the plan does not encompass the provision for reversion to the company. This argument ignores Paragraph 8 of the Pension Agreement:

### 8. TRUST

8.1 For the purpose of supplying the benefits herein provided, the Company may establish or cause to be established a trust or trusts or may utilize any existing trust or trusts heretofore established by or on behalf of the Company. The Company is free to determine the manner and means of making provision for funding and paying the benefits set forth in this Agreement.

Plaintiffs are correct only in that the Pension Agreement does not name the Trust Agreement. This, ironically, is because the company was given freedom to decide whether to establish a trust. Although the Pension Agreement does not refer to the Trust Agreement by name, it clearly does incorporate whatever trust provisions the company decided to establish

from time to time. Such provisions include reversion of excess funds. We conclude that the plan does provide for distribution of residual assets as required by section 1344(d)(1)(C).

### 2. Materiality of Undecided Factual Issues

Plaintiffs belatedly argue that factual issues remain to be resolved. Assuming that such argument is now available, we conclude that it lacks merit. Having reviewed Article IX of the Trust Agreement and Paragraph 8 of the Pension Agreement, we dismiss plaintiffs' argument that the district court erred by not developing a record on four factual issues:

a. [W]hether the Company informed participants of the existence of a document (Trust Agreement) varying the rights they would otherwise have upon plan termination.

Any participants who read the Pension Agreement would have known another document would control termination of the plan.

b. [W]hether the Company and Union intended to give the Company the power to adopt another agreement permitting recapture of pension assets after plan termination.

c. [W]hether the parties considered pension assets to "belong" to employees.

d. [W]hether the Company's plan termination itself caused part of the surplus funding by preventing predictable liabilities from accruing even though the parties intended those liabilities to accrue.

Raising each of these issues is merely an attempt to refute by extrinsic evidence the unambiguous intentions of the parties set forth in the Pension Agreement. Paragraph 8 of that agreement establishes that the parties intended to give the company the power to adopt another agreement permitting recapture and that the excess pension assets belonged to the company. Paragraphs 2 through 6 define what benefits participants shall be awarded and Paragraph 10(8) provides clearly that upon 120

days' written notice the company can stop further liabilities accruing. Where a collective bargaining agreement is unambiguous, this court will not admit contradictory extrinsic evidence. *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 761 (9th Cir.1981); *see also Sullivan v. Massachusetts Mutual Life Insurance Co.,* 611 F.2d 261, 264 (9th Cir.1979) (per curiam) (summary judgment appropriate where parol evidence rule precludes evidence that would otherwise raise triable issues of fact).

### III. CONCLUSION

Although the district court's alternative holding that it lacked jurisdiction was erroneous, we affirm the dismissal for failure to state a claim.

The judgment is AFFIRMED.