**INDEPENDENT FEDERATION OF FLIGHT ATTENDANTS, Plaintiff,**

v.

**David DAVIS, as Executive Director of the Massachusetts Port Authority, and Trans World Airlines, Inc., Defendants.**

Civ. A. No. 86–0877–C.

United States District Court, D. Massachusetts.

April 25, 1986.

---

Michael S. Bearse, Finnegan & Underwood, Boston, Mass., for plaintiff.

Alan Grodnitzky, Michael R. Brown, Goldstein & Manello, Boston, Mass., for defendant TWA.

Richard F. Meyer, Massport Authority, Boston, Mass., for defendant David Davis.

Ira Wallach, Massport Authority, Boston, Mass., for Massport.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action in which the plaintiff, Independent Federation of Flight Attendants ("the IFFA,"), seeks a preliminary injunction against the defendant, David Davis, as executive director of the Massachusetts Port Authority ("Massport"), and against defendant, Trans World Airlines, Inc. ("TWA"). Jurisdiction over this matter is based on 28 U.S.C. §§ 1331 and 1337. Plaintiff's claim arises under the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("the RLA") since TWA is a "common carrier by air." *See* 45 U.S.C. § 181.

The facts in this case do not appear to be in dispute.[1] The IFFA is a labor organization and is the certified collective bargaining representative of TWA's flight attendants. The collective bargaining agreement between TWA and the IFFA became amendable in July of 1984. The parties were unsuccessful in their efforts to nego-

tiate a new agreement and at midnight, March 6, 1986, the IFFA began a system-wide lawful strike against TWA.

Prior to commencement of the strike, Massport authorized the IFFA to conduct picketing at the upper and lower Terminal C entrances to TWA. TWA, however, refused to allow the IFFA to also set up a picket line at the TWA hangar facility and cargo building located on Prescott Street at Logan International Airport. This area is leased by Massport to TWA and therefore is TWA's private property. The IFFA found this arrangement unsatisfactory and following a meeting with both parties on March 10, 1986, Massport confirmed that the entrance and exit of TWA flight crews was limited to the upper and lower levels of Terminal C and to a location on Prescott Street which leads to the entrance to the TWA hangar area, and that informational picketing was limited to those three areas. Members of the striking union were informed that they would be arrested if they attempt to picket on TWA's private property on Prescott Street.

The Prescott Street site where the IFFA is now permitted to picket is about seven to eight hundred feet from TWA's hangar and cargo facilities, at the intersection of Prescott Street and an airport service road. There is at least one stop sign at that location. Employee parking lots, entrances to fuel farms and the Delta Airlines hangar and office are located between the designated picketing site and the TWA hangar and cargo facilities, which is at the end of Prescott Street. TWA transports its non-striking employees and strike replacements by motor vehicle to and from their assigned duty stations to its Prescott Street facility. Other persons having business with TWA also use Prescott Street. It is not, however, a roadway ordinarily travelled by the general public. The IFFA is also picketing at the Sheraton Boston, where TWA houses its out-of-town crew members.

---

1. At a hearing before this Court, counsel for the parties agreed that it was not necessary to take testimony. The one exhibit, admitted into evidence without objection at the hearing, is a map of the terminal area of Boston-Logan International Airport.

The IFFA seeks an order from this Court enjoining TWA from denying the union's picketers access to TWA's premises on Prescott Street. According to the IFFA, it is unable to effectively communicate with strike replacements at Prescott Street because of the lack of pedestrian traffic along the route, the method of transporting employees, and the presence of other employers in the same locale. The IFFA argues that TWA's property rights must yield to the union's right to picket and to publicize its dispute, and that the IFFA has no other effective alternative place or means for engaging strike replacements in conversation. In addition, the IFFA claims that the current restrictions on picketing activity on Prescott Street create traffic and safety hazards to the picketers and members of the public.

█ The defendant TWA, in opposition, asserts that this Court lacks jurisdiction to issue the injunction requested by the IFFA because of the Norris-LaGuardia Act's restrictions on the use of injunctions in connection with labor disputes. Although disputes between the IFFA and TWA are generally governed by the RLA, *see* 45 U.S.C. § 181, when the RLA procedures are exhausted, so are the policies which are peculiar to the RLA. *Trans Int'l Airlines v. International Bhd. of Teamsters,* 650 F.2d 949, 963 (9th Cir.1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 919, 66 L.Ed.2d 839 (1981). Thereafter, the parties are governed by general labor law principles. *Id.* The Norris-LaGuardia Act thus applies to labor disputes involving air carriers once their duties under the RLA have been fulfilled. *Railroad Telegraphers v. Chicago & N.W.R. Co.,* 362 U.S. 330, 342, 80 S.Ct. 761, 767–68, 4 L.Ed.2d 774 (1960). The procedures mandated by the RLA have been exhausted in the case now before this Court, and thus I rule that the Norris-LaGuardia Act applies to the jurisdictional challenge.

Section 1 of the Norris-LaGuardia Act, 29 U.S.C. § 101, provides that:

No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

The public policy behind this restriction on the jurisdiction of federal district courts is found in Section 2 of the Act,[2] which states that workers should have freedom of association, organization, representation and negotiation. *Railroad Telegraphers,* 362 U.S. at 335–36, 80 S.Ct. at 764–65. The Norris-LaGuardia Act was principally concerned with curtailing the abuse of injunctions directed against union activities. *Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1124 (6th Cir.1981); *Local 205, United Electrical Radio and Machine Workers v. General Electric Co.,* 233 F.2d 85, 93 (1st Cir.1956), *aff'd on other grounds,* 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957).

█ The broad proscription contained in section 1 of the Norris-LaGuardia Act does not mean that injunctions may never be

---

**2.** Section 2, 29 U.S.C. § 102, provides in pertinent part:

Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to association with his fellows, it is necessary that he have full freedom of associa-

tion, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definitions of and limitations upon the jurisdiction and authority of the courts of the United States are enacted.

issued in labor disputes. *See e.g., Heheman,* 661 F.2d at 1124–25. The United States Supreme Court has created narrow exceptions to the anti-injunction provisions of the Norris-LaGuardia Act. *Id.* at 1124. Specific performance of grievance arbitration clauses may be ordered against management and specific performance of no-strike provisions may be ordered against unions. *Id.* Courts of Appeals have found injunctions permissible in labor disputes on the grounds that the activity sought to be enjoined was not included in the catalogue of conduct not subject to injunction found in section 4 of the Act,[3] or that the case did not involve the type of labor dispute or the abuses against which the Act was directed. *Id.* at 1124–25, *citing Retail Clerks Union Local 1222 v. Alfred M. Lewis, Inc.,* 327 F.2d 442, 446–48 (9th Cir.1964) (district court had jurisdiction to order employer to comply with provision in collective bargaining agreement where not type of injunction contemplated by Norris-LaGuardia Act); *Parks v. International Bhd. of Elec. Workers,* 314 F.2d 886, 919 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963) (district court had jurisdiction to order injunctive relief requested by union against its international parent union where relief not related to specific prohibitions in section 4 of the Norris-La-

Guardia Act). Another court of appeals examined the Act's legislative history and purpose as stated in section 2, and found that the Norris-LaGuardia Act was intended to protect employees and thus did not deprive district courts of jurisdiction to issue injunctions against employers. *Brotherhood of Locomotive Eng. v. Baltimore & Ohio R. Co.,* 310 F.2d 503, 518 (7th Cir.1962), *aff'd on other grounds,* 372 U.S. 284, 83 S.Ct. 691, 9 L.Ed.2d 759 (1963). Finally, the inclusion in section 7 of the Norris-LaGuardia Act of procedures for courts to follow prior to issuing injunctions in labor disputes indicates that Congress did not intend to withdraw all jurisdiction to grant injunctive relief in labor disputes.

■ Based on the foregoing discussion, I rule that the Norris-LaGuardia Act does not deprive this Court of jurisdiction to grant the injunction requested by the IFFA should it choose to do so. The conduct sought to be enjoined, i.e., the denial of permission to picket on the property of the employer against whom the union is striking, is not an activity listed in section 4 of the Norris-LaGuardia Act as an act that cannot be enjoined in a labor dispute. This is clearly not the type of injunction whose abuse the Norris-LaGuardia Act was intended to curtail.

---

3. Section 4 provides:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;

(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

(d) By all lawful means aiding any person participating or interested in any labor dis-

pute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;

(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

29 U.S.C. § 104.

Having found that the Norris-LaGuardia Act does not deprive the Court of jurisdiction in this case, the remaining question is whether the IFFA has met the appropriate standard for equitable relief. The IFFA argues that the Court is not bound by the restrictions found in section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, which requires a court to follow certain procedures and make certain findings of facts prior to issuing an injunction in a labor dispute. Accepting the union's claim that section 7 does not apply to this proceeding, it follows then that the Court should follow traditional principles of equity in determining whether an injunction should issue against the defendants. The four factors that a court must consider under traditional principles of equity when faced with a request for a preliminary injunction are: (1) the threat of immediate irreparable harm; (2) the likelihood of success on the merits; (3) whether the public interest would be better served by issuing rather than denying the injunction; and (4) the comparable hardship a decision would inflict on either party. *Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency*, 649 F.2d 71, 74 (1st Cir. 1981).

The IFFA has the burden of establishing the existence of each of the four factors required to support the issuance of a preliminary injunction. *Id.* Usually, the first two factors are determinative and are often closely related to each other. *AFM Pilots Assoc. v. AFM Corp.*, 96 L.C. (CCH) ¶ 14, 115, at 23, 825 (D.Mass.1982). The first factor for consideration is whether there is a threat of immediate irreparable harm. A preliminary injunction will not be issued unless there is an actual, viable, presently existing threat of serious harm which cannot be undone. *Mass. Coalition*, 649 F.2d at 74. The IFFA asserts that it is being deprived of its rights under federal labor law to peacefully protest and to effectively communicate with TWA's non-strik-

ing employees and strike replacements, and with other persons having business with TWA, because of TWA's refusal to allow picketers access to TWA's premises on Prescott Street. According to the IFFA, the present designated picketing site on Prescott Street is insufficient. At the hearing on the IFFA's request for a preliminary injunction, however, TWA stated, without contradiction, that the IFFA's pickets at their present location on Prescott Street have reduced by 50% the transport of cargo down that road to the TWA facility. Picketers at the present location carry large signs which obviate any possible confusion as to which airline is the target of the labor action. Moreover, the IFFA also has picket lines set up at the Sheraton Boston where TWA houses its strike replacements. In light of these facts, I rule that the IFFA has not shown that it is not effectively communicating with the targets of its picketing efforts and thus the IFFA has not established that it is subject to immediate irreparable harm.

The second factor to address is whether the IFFA has demonstrated a reasonable likelihood for success on the merits.[4] The IFFA asserts that TWA's property rights must yield to the IFFA's right to strike and to effectively communicate with TWA's non-striking employees and strike replacements. In support of this proposition, IFFA cites several cases decided under the National Labor Relations Act ("the NLRA"). Although the NLRA does not govern labor disputes between an air carrier such as TWA and its employees, policies developed under the NLRA are instructive in cases arising under the RLA when no statutory interpretation unique to the RLA is at issue. *Trans Int'l Airlines*, 650 F.2d at 959.

The United States Supreme Court has found that when a conflict exists between a labor union members' right under section 7 of the NLRA to engage in peaceful picketing and an employer's private

---

**4.** Although the IFFA's failure to demonstrate the existence of an immediate threat of irreparable harm warrants the denial of a preliminary injunction on that basis alone, *see Mass. Coalition*, 649 F.2d at 74, I will address the remaining three factors.

property rights, an accommodation must be reached between the two with as little destruction to one as is consistent with maintenance of the other. *Hudgens v. NLRB,* 424 U.S. 507, 521, 96 S.Ct. 1029, 1037, 47 L.Ed.2d 196 (1976). The locus of that accommodation depends on the nature and strength of the rights asserted by each party in a particular case. *Id.* at 522, 96 S.Ct. at 1037–38. In this case, TWA's property rights must be balanced against the IFFA's right to effectively picket. As stated above, the IFFA has not shown that it is not presently communicating effectively with its target audience or that another alternative means of reaching the target is not available. Indeed, another alternative site for picketers is in fact being used by the IFFA, namely, the Sheraton Boston location. In this case, therefore, TWA's property rights outweigh the IFFA's right to picket on TWA's property. The fact that the IFFA views the site on Prescott Street where it is now allowed to picket as a less desirable or effective location than TWA's cargo and hangar facilities is not determinative, and may be outweighed by the rights of others. *See Nelson v. City of Chicago,* 60 L.R.R.M. (BNA) 2396, 2401 (N.D.Ill.1965).

The IFFA has cited several cases decided by the National Labor Relations Board ("the Board") under the NLRA in support of its position on this issue. These cases are distinguishable from the facts in the matter before this Court. For example, in *Scott Hudgens,* 230 NLRB Dec. (CCH) ¶ 18, 290 (1977), the case upon which the IFFA relies most heavily, picketers sought access to the general walking area in front of the target store in a private shopping mall, a walkway which the general public is invited to use and which is the equivalent of a public sidewalk. *Id.* at 30, 372–73. The store was one of 60 in the mall and the Board found that restricting picketers to the closest public area, about 500 feet from the store, would seriously dilute the picketers' message. *Id.* In contrast, in the case before this Court, there is only one other enterprise on Prescott Street and no danger that travellers along that roadway will

be confused about who is the target of the strike. Moreover, Prescott Street and TWA's cargo and hangar facilities are not generally open to the public at large. I rule that the IFFA has not established a substantial likelihood of success on the merits.

 Consideration of the final two factors also does not weigh in the IFFA's favor. The IFFA refers to the public interest at issue as the interest in effectuating labor's right to peacefully picket in the context of a primary economic strike. There is, however, an equally important public interest which permeates the RLA, the interest in avoiding interference with a carrier's operations. See 45 U.S.C. § 152. The IFFA has not shown this Court that the public interest as a whole would be better served by issuing the limited preliminary injunction it seeks. As for the comparable hardship to the parties factor, again, the IFFA has not established that denial of the preliminary injunction authorizing the IFFA to move the pickets about 700 feet up Prescott Street will cause it to suffer a greater hardship than TWA will suffer from its issuance.

Order accordingly.