# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2718

_____

| | | |
|---|---|---|
| John Dame, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| First National Bank of Omaha, as | * | District Court for the |
| Trustee of the United-A. G. | * | District of Nebraska. |
| Cooperative, Inc., Employees | * | |
| Retirement Plan; United-A. G. | * | |
| Cooperative, Inc., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: January 10, 2000

Filed: June 30, 2000

_____

Before BOWMAN and LOKEN, Circuit Judges, and ALSOP,[*] District Judge.

_____

LOKEN, Circuit Judge.

After ceasing business operations, United-A.G. Cooperative, Inc. ("United"), announced it would terminate its single-employer defined benefit pension plan ("the

---

[*]The HONORABLE DONALD D. ALSOP, United States District Judge for the District of Minnesota, sitting by designation.

Plan"). First National Bank of Omaha ("First National") is the Plan trustee. The Plan is over-funded, that is, due to actuarial miscalculations it has $2.1 million more than will be needed to pay all pension benefits owing to Plan participants, who are United employees. John Dame, a Plan participant, commenced this action, seeking a declaration that the excess funds belong exclusively to Plan participants. United contends that the employer-contributed excess funds should be distributed to United. First National seeks judicial guidance so it may distribute the excess funds without liability. Following trial on stipulated facts, the district court[1] ruled in favor of United. Dame appeals, arguing the court erred in interpreting the Plan and in refusing to "defer" to arbitration. We affirm.

The Plan is governed by a complex federal statute, the Employee Retirement Income Security Act, known as ERISA. Enacted to protect pension and welfare benefits promised to employees, ERISA provides, with limited exceptions, that "the assets of a plan shall never inure to the benefit of any employer." 29 U.S.C. § 1103(c)(1). One exception is found in 29 U.S.C. § 1344(d), which deals with the distribution of residual assets after a single-employer plan has been terminated and all its liabilities have been satisfied. Such assets may be distributed to the employer if they did not come from employee contributions, if that distribution is not contrary to law, and if the plan so provides. See Hawkeye Nat'l Life Ins. Co. v. Avis Indus. Corp., 122 F.3d 490, 500-01 (8th Cir. 1997). The issue in this case is whether the Plan so provides.

Dame relies on Section 6.8 of the Plan. Tracking the anti-reversion language in 29 U.S.C. § 1103(c)(1), § 6.8 provides:

_____

[1]The HONORABLE THOMAS D. THALKEN, United States Magistrate Judge for the District of Nebraska, who heard and decided the case with the consent of the parties on stipulated facts. See 28 U.S.C. § 636(c).

All contributions paid by a participating Employer to the Trustee pursuant to this Article shall constitute irrevocable contributions to the Trust Fund . . . and no part shall at any time revert to any Employer or participating Employer.

United relies on § 16.10 of the Plan. Located in Article XVI, entitled "Amendment and Termination," § 16.10 provides:

. . . after the allocation and distribution of Plan assets to Participants and Beneficiaries and the satisfaction of all Plan liabilities, fixed and contingent, any remaining excess funds in the Trust Fund shall be referred to Employer.

The district court concluded that § 16.10 requires distribution of the excess funds to United, and that this specific directive is an exception to the more general anti-reversion mandate in § 6.8. This construction is consistent with the principle that, when a specific provision and a general provision in a contract potentially conflict, the specific is construed as modifying the general. See Burk v. Nance Petroleum Corp., 10 F.3d 539, 543 (8th Cir. 1993); Parrett v. American Ship Bldg. Co., 990 F.2d 854 (6th Cir. 1993); Panwitz v. Miller Farm-Home Oil Serv., Inc., 422 N.W.2d 63, 66 (Neb. 1988). But Dame contends the district court has misread § 16.10.

Dame argues on appeal, as he did in the district court, that § 16.10 of the Plan does not mandate distribution of the excess funds to United. Dame notes that § 16.10 provides that excess funds "shall be *referred* to Employer," and that "refer" is not synonymous with "revert." To give proper effect to the broad anti-reversion language in § 6.8, Dame argues that "referred to Employer" should be construed as meaning only that "excess Plan assets [are] to be reviewed by United in order to make a determination of how to distribute the plan excess." Like the district court, we disagree.

-3-

The Plan is a defined benefit plan, entitling employee-participants to a pre-determined, fixed level of benefits. See generally Hughes Aircraft Co. v. Jacobson, 525 U.S. 432 (1999). Section 6.3 of the Plan expressly provides that "[n]o part" of any excess contributions "shall be applied to increase the benefits of the Participants or their Beneficiaries." Dame argues that § 6.3 applies only to United's "initial contributions," but that is contrary to its plain language. If § 6.3 bars distribution of excess funds to participants and beneficiaries, and if, as Dame argues, § 16.10 does not direct distribution to United, then the Plan lacks clear or even intelligible instructions that will allow First National as trustee to distribute residual Plan assets without inviting litigation. And under Dame's construction of § 16.10, when this question is "referred to Employer," what input should United provide regarding the appropriate disposition of excess Plan assets? Thus, Dame's construction of § 16.10 is plainly deficient.

Returning to the language of § 16.10, we conclude that it will sustain the district court's sensible construction that excess funds should be distributed to United. In the context of this ERISA plan, "referred to Employer" was a terrible choice of words. A *person* is normally referred somewhere to obtain, for example, information or a decision, whereas § 16.10 deals with how the Plan trustee should distribute excess *assets*. Without doubt, "reverted" or "returned" or "transferred" to Employer would have been far preferable to convey the meaning urged by United. Indeed, it may well be that the word "referred" was a drafting or typographical error in preparing the Plan. Nevertheless, the word is there and must be rationally interpreted, unless to do so would create a total absurdity, an escape hatch in the construction of contracts that courts are properly reluctant to invoke. "Refer" means "to send or direct." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, Refer (unabridged ed. 1986). When used in conjunction with inanimate assets, such as excess funds, "referred" most logically means "transferred," even though that is not its normal connotation. The legal issue under 29 U.S.C. § 1344(d)(1)(C) is whether the Plan expressly directs that excess funds be paid to the employer. A wide variety of terms have been held adequate for that purpose. See Shepley v. New Coleman Holdings Inc., 174 F.3d 65, 69 (2d Cir.

1999) ("revert"); Hawkeye, 122 F.3d at 494 ("receive"); Holland v. Valhi Inc., 22 F.3d 968, 970 (10th Cir. 1994) ("paid"); Parrett, 990 F.2d at 856 ("distributed"); Schuck v. Gilmore Steel Corp., 784 F.2d 947, 951 (9th Cir. 1986) ("returned"). In these circumstances, we agree with the district court that § 16.10 of the United Plan expressly directs the distribution of excess assets to United.

Alternatively, Dame argues the district court should have deferred to arbitration. The Plan is the vehicle for providing pension benefits that were collectively bargained between United and Local No. 554 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. When this suit was filed, a collective bargaining agreement was in effect. Section 24.1 of the agreement declared that employees "are the exclusive beneficiaries" of United's qualified pension trust (the Plan), and required United "to maintain its qualified pension trust . . . during the life of this agreement." The agreement did not expire until March 29, 2000, and contained a typical provision requiring the arbitration of all disputes "respecting the meaning or application" of the agreement. Dame argues that United's announced intent to terminate the Plan raises an arbitrable issue of collective bargaining agreement compliance, and that arbitration might shed light on the meaning of § 6.8 and § 16.10 of the Plan.

The union and United have not arbitrated, nor begun to arbitrate, any dispute over termination of the Plan and § 24.1 of the collective bargaining agreement. Dame commenced this action under ERISA, not under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, or § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The collective bargaining agreement does not expressly incorporate the Plan, so the arbitration clause does not apply to disputes that involve only interpretation of the Plan. Moreover, unlike the dispute in the pre-ERISA case of United Steelworkers of America v. General Steel Indus., Inc., 499 F.2d 215 (8th Cir. 1974), we need not interpret the collective bargaining agreement in order to construe the provisions of the Plan here at issue. No party contends that the excess funds issue is not ripe for adjudication under

ERISA and the Declaratory Judgment Act. And judicial construction of the Plan will not bar the union (or United) from later arbitrating collective bargaining agreement disputes, such as a dispute over whether United violated § 24.1 by early termination of the Plan. In these circumstances, the district court properly declined to "defer" resolution of this Plan dispute to non-existent arbitration under United's collective bargaining agreement with the Teamsters.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.